UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN PINKHAM,

                              Plaintiff,

        v.

AETNA LIFE INSURANCE COMPANY
and TOYS "R" US, INC.,

                              Defendants.

No. 15-CV-6462 (KMK)

OPINION & ORDER

Appearances:

Michael E. Quiat, Esq.
Uscher, Quiat, Uscher & Russo, P.C.
Hackensack, NJ
*Counsel for Plaintiff*

Christopher Abatemarco, Esq.
Connell Foley LLP
Roseland, NJ
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Karen Pinkham ("Plaintiff") brings this Action against Aetna Life Insurance

Company ("Aetna") and Toys "R" Us, Inc. ("Toys," and together with Aetna, "Defendants")

alleging that Defendants breached their fiduciary duty to Plaintiff and breached the terms of

Plaintiff's health benefits plan in violation of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 502(a)(1)(B) and 1132(a)(1)(B).  (*See* Second Am. Compl. ¶¶ 17–24

(Dkt. No. 21).)  Both Plaintiff and Defendants now move for summary judgment.  (*See* Dkt. Nos.

42, 47.)  For the following reasons, Plaintiff's Motion is denied and Defendants' Motion is

granted.

## I.  Background

### A.  Factual Background

Plaintiff was employed by Toys starting in 2007.  (*See* Pl.'s Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") ¶ 2 (Dkt. No. 49); Defs.['] Resp. to Pl.['s] Local Civil Rule 56.1 Statement of Material Facts ("Defs.' Counter 56.1") ¶ 2 (Dkt. No. 55).)[1]  Plaintiff was a participant in the "R Consumer Directed Health Plan" (the "Plan"), "a 'self-funded' health benefit plan governed by ERISA, provided to Plaintiff through her employment with Toys," the "Plan Sponsor and Plan Administrator."  (Local Civil Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶¶ 1–2 (Dkt. No. 43) (some internal quotation marks omitted); Pl.'s Counterstatement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s Counter 56.1") ¶¶ 1–2 (Dkt. No. 53).)  Aetna "provides and administers health benefits under the terms of various health benefit plans" and "was the Claims Administrator and Claims Review Fiduciary" for the Toys Plan.  (Defs.' 56.1   ¶¶ 4–5; Pl.'s Counter 56.1 ¶¶ 4–5.)  "The Plan gives Aetna discretionary authority to determine eligibility for benefits or to construe the terms of the [P]lan."  (Defs.' 56.1 ¶ 16; Pl.'s Counter 56.1 ¶ 16.)

The Plan insures Plaintiff for the following services:

Dental Services—for:
- surgery needed to:
  - treat a fracture, dislocation or wound
  - remove cysts, tumors or other diseased tissue
  - cut into gums or tissue of the mouth (when not in connection with the removal, replacement or repair of teeth)
  - alter the jaw or bite when appliance therapy alone does not improve function
- treatment of infection or disease that is not related to the teeth

---

[1] Defendants note that Plaintiff was employed by "Toys 'R' Us – Delaware, Inc.," a subsidiary of Toys.  (Defs.' Counter 56.1 ¶ 2.)

- dental work, surgery or orthodontic treatment needed to remove, repair, replace, restore or reposition sound natural teeth or mouth tissue damaged as a result of an injury (must be treated in the policy year of the incident or the following year); coverage provided for the first crown, denture, bridgework and/or appliance needed only.

(*See* Aff. of Christopher Abatemarco, Esq. ("Abatemarco Aff.") Ex. A ("Admin. R.") 38 (Dkt. No. 46) (emphasis omitted).)[2] The Plan "does not pay benefits for all medical services and supplies—even if recommended by a physician." (*Id.* at 44 (emphasis omitted).) Excluded from coverage are "dental services or treatment, except as specified," as well as "services, medical supplies or treatment not medically necessary for treatment of [the insured's] condition." (*Id.*)

Along with the Plan, Aetna issued a "Clinical Policy Bulletin" to its claims staff and medical reviewers. (*See* Pl.'s 56.1 ¶ 24; Defs.' Counter 56.1 ¶ 24.) The Clinical Policy Bulletin states in relevant part:

Treatment of Jaw and Contiguous Structures:

. . . Standard HMO and traditional plans cover the removal of tumors, treatment of dislocations, facial and oral wounds/lacerations, and removal of cysts or the jaws or facial bones, or other diseased tissues. . . .

Removal of Impacted Teeth:

. . . Standard traditional plans cover the surgical removal of erupted teeth, soft tissue impacted teeth and bone impacted teeth. . . .

Dental Services that are Integral to Medical Procedures:

A dental service that would otherwise be excluded from coverage under Aetna's medical plans may be a covered medical expense if the dental service is medically necessary and is incident to and an integral part of a service covered under the medical plan. . . .

---

[2] Page citations to the Administrative Record ("Admin. R.") reflect the Bates stamp at the bottom right-hand corner of the page.

<u>Dental Services Not Integral to Medical Services</u>:

. . . Removal of teeth at risk of infection, periodontal therapies, and subsequent oral rehabilitation reconstruction (i.e., the replacement of teeth) are not covered under medical plans even where these services are medically necessary prior to major surgical procedures such as open heart surgery, organ transplantation, joint reconstructive surgery or other types of surgery. . . .

<u>Dental Services Accompanying Reconstructive Surgery</u>

. . . Most of Aetna's traditional medical plans do cover replacement of teeth as a result of a non-biting injury. . . .

(Admin R. 313–15.)

In July 2013, Plaintiff's was diagnosed with external cervical resorption ("ECR") and sought treatment from Anthony Pavone, DDS, MD, FACS ("Dr. Pavone") in connection with the condition. (*See* Pl.'s 56.1 ¶¶ 5–6; Defs.' Counter 56.1 ¶¶ 5–6.)[3] On July 29, 2013, Dr. Pavone performed oral surgery on Plaintiff and extracted three teeth, resulting in dental implants and bone grafting. (*See* Pl.'s 56.1 ¶ 6; Defs.' Counter 56.1 ¶ 6.) On June 19, 2014, Dr. Pavone again performed surgery on Plaintiff, extracting an additional tooth and replacing it with a dental implant and bone grafting. (*See* Pl.'s 56.1 ¶ 7; Defs.' Counter 56.1 ¶ 7.) The extracted tooth was analyzed by New York University's College of Dentistry's Surgical Pathology Laboratory, which issued a report confirming that Plaintiff had ECR. (*See* Pl.'s 56.1 ¶ 8; Defs.' Counter 56.1 ¶ 8.) On July 3, 2014, A. Ross Kerr, DDS ("Dr. Kerr") examined Plaintiff. (*See* Pl.'s 56.1 ¶ 9; Defs.' Counter 56.1 ¶ 9.)

---

[3] Plaintiff describes ECR as "a pathological condition associated with the inflammation of periodontal tissue leading to an irreversible loss of cementum, dentin, and bone in the affected teeth." (Pl.'s 56.1 ¶ 5). Defendants contend that this statement is "an inappropriate statement of a Rule 56.1 Statement of Material Facts as it seeks a translation of documents [and] . . . . is obviously not a Statement of Fact," (Defs.' Counter 56.1 ¶ 5), but do not offer an alternative definition.

In a letter to Aetna dated July 24, 2014, Dr. Pavone wrote, "Although one may be quick to term [Plaintiff's] condition as dental in nature, further study shows that her loss of teeth is a pathologic condition and therefore, should be considered under her medical insurance plan." (Pl.'s 56.1 ¶ 11; Defs.' Counter 56.1 ¶ 11 (internal quotation marks omitted).)  Dr. Pavone also submitted to Aetna requests for payment for the procedures performed.  (*See* Admin. R. 135, 143.)  On July 25, 2014, the following day, Dr. Pavone extracted an additional five teeth from Plaintiff, again requiring dental implants and bone grafting.  (*See* Pl.'s 56.1 ¶ 10; Defs.' Counter 56.1 ¶ 10.)

In a letter to Aetna dated August 14, 2014, Owen McShane, DDS ("Dr. McShane") stated:

> [Plaintiff's] pathological condition is not due to dental neglect or dental caries.  This irreversible loss of tooth and bone structure appears to be due to an auto inflammatory resorption condition the exact etiology of which is unknown . . . [Plaintiff's] disease appears to be outside the tooth structure and should be considered under her medical insurance plan.

(Pl.'s 56.1 ¶ 12; Defs.' Counter 56.1 ¶ 12.)  Dr. McShane simultaneously filed a request for payment.  (*See* Admin. R. 172–73.)[4]

On September 14, 2014, Aetna sent Dr. Pavone a letter denying coverage for the removal of Plaintiff's teeth.  (*See* Pl.'s 56.1 ¶ 16; Defs.' Counter 56.1 ¶ 16; *see also* Defs.' 56.1 ¶ 19; Pl.'s

---

[4] In a letter dated September 5, 2014, Dr. Kerr also wrote to Aetna stating:

> [Plaintiff's] diagnosis is idiopathic external cervical root resorption . . . , a rare condition of unclear etiology and uncertain management.  Even though this involves the teeth, this is a systemic medical problem resulting from an aberrant resorptive process, and as such, it is my strong opinion that [Plaintiff's] medical insurance should cover this treatment as she is likely to lose more teeth over time.

(Pl.'s 56.1 ¶ 9; Defs.' Counter 56.1 ¶ 9 (alteration omitted).)  Dr. Kerr did not submit any requests for payment.

Counter 56.1 ¶ 19.)  On September 19, 2014, Aetna sent Dr. McShane a letter denying coverage for Plaintiff's treatments.  (*See* Pl.'s 56.1 ¶ 17; Defs.' Counter 56.1 ¶ 17; *see also* Defs.' 56.1 ¶ 19; Pl.'s Counter 56.1 ¶ 19.)

On or about October 22, 2014, Plaintiff appealed Aetna's decision to deny benefits.  (*See* Pl.'s 56.1 ¶ 18; Defs.' Counter 56.1 ¶ 18; Defs.' 56.1 ¶ 20; Pl.'s Counter 56.1 ¶ 20.)  Michael Loftus, DDS ("Dr. Loftus"), along with Complaint and Appeal Nurse Karen Santora, RN and Complaint and Appeal Analyst Karla James Howard reviewed Plaintiff's appeal.  (*See* Pl.'s 56.1 ¶ 19; Defs.' Counter 56.1 ¶ 19; Defs.' 56.1 ¶¶ 22–23; Pl.'s Counter 56.1 ¶¶ 22–23.)  In a letter dated December 9, 2014, Aetna informed Plaintiff of its decision to uphold the previous denial of benefits.  (*See* Pl.'s 56.1 ¶ 20; Defs.' Counter 56.1 ¶ 20.)  The letter stated:

> We reviewed all available information, including:
> - Your appeal request
> - Claims
> - Letter from Dr. A. Ross Kerr
> - Predetermination letters
> - Progress notes
> - Claim form
> - Medical literature
> - X-rays
> - Clinical Policy Bulletin: Dental Services and Oral Maxillofacial Surgery Coverage Under Medical
> - The Toys "R" Us, Inc. Summary Plan Description
>
> . . . Based on our review of the above information, we are upholding the previous decision to deny benefits for dental implants and accompanying procedures as not covered under the medical plan.
>
> . . . The materials reviewed indicate that [Plaintiff] ha[s] had external cervical resorption of several . . . teeth in the maxilla and mandible. . . .  The clinical articles submitted describe this external cervical resorption (ECR) odontoclasic process with an uncertain etiology.  It apparently does not involve the bone and is not associated with any systemic osteoclastic process.  ECR has been associated with prior orthodontic treatment and/or dental trauma.  The process is entirely confined to the dentition as there has been no correlation with any systemic disorder.  The clinical notes indicate that [Plaintiff] had [o]rthodontic treatment 20 years ago. . . .  Whether or not ECR is precipitated by an inflammatory process or

6

is a fibro-vascular/fibro-osseous disorder it is a localized dental condition. Dental implants and the associated services necessary to allow for implant placement is not a covered medical service. The available data did not correlate ECR with any systemic disorder. This is a localized dental condition, therefore the denial is upheld.

(Admin. R. 286.)

On January 12, 2015, Plaintiff filed a second-level appeal of Aetna's decision to deny benefits. (*See* Pl.'s 56.1 ¶ 21; Defs.' Counter 56.1 ¶ 21.) Robert Diecidue, DMD ("Dr. Diecidue"), Appeals Nurse Consultant Monica Rounds, RN, and Senior Complaint and Appeal Analysts Mia Roth and Carol Malig reviewed Plaintiff's second-level appeal. (*See* Pl.'s 56.1 ¶ 22; Defs.' Counter 56.1 ¶ 22; Defs.' 56.1 ¶¶ 26–27; Pl.'s Counter 56.1 ¶¶ 26–27.) In a letter dated February 19, 2015, Aetna again upheld its decision to deny Plaintiff benefits. (*See* Pl.'s 56.1 ¶ 23; Defs.' Counter 56.1 ¶ 23.) In relevant part, the letter stated

[Aetna] ha[s] found our previous determination was correct based on a review of the [P]lan. An Aetna medical director reviewed your request and determined that the dental procedures are not covered. . . .

We reviewed all available information, including:
- Your level two appeal
- The level one appeal letter
- The level one denial letter
- Predetermination denial letters
- Letter from Dr. A. Ross Kerr
- Progress notes
- X-ray
- Claim
- Claim history
- Literature
- All information previously reviewed during the level one appeal
- Aetna Clinical Policy Bulletin (CPB) pertaining to "Dental Services and Oral and Maxillofacial Surgery: Coverage Under Medical Plans"
- The Summary Plan Description (SPD) for Toys "R" Us, Inc.

. . . [Plaintiff] . . . presented with a history of root resorption that began approximately one year ago. . . . By the time the problem was discovered the teeth were non-salvageable and were ultimately extracted and replaced by implants. There was no history of dental trauma . . . , no oral surgical procedures (other than

recent extractions/implants), no periodontal surgery, but [Plaintiff] had a part history of orthodontic treatment (with banding) > 20 years ago. [Plaintiff's] medical history is pertinent for a mild anemia which has required no intervention. [Plaintiff] denied any other medical issues and is not currently taking any medications. [Plaintiff] ha[s] no significant social history, and denied tobacco use. There have been no recent changes in oral hygiene products. There is a possible bruxing history.[5]

> The examination revealed no extra-oral abnormalities . . . . Intra-orally, there were no obvious soft tissue abnormalities. Radiographic examination revealed new areas of significant resorption at the cervical regions of teeth number 5 & 10.

> [Plaintiff's] diagnosis is idiopathic external cervical root (ECR) resorption . . . , a rare condition of unclear etiology and uncertain management.

> . . . The available data did not correlate ECR with any systemic disorder. This is a localized dental condition.

(Admin. R. 306–07 (footnote added).) Plaintiff has thus exhausted all available administrative appeal rights. (*See* Pl.'s 56.1 ¶ 25; Defs.' Counter 56.1 ¶ 25.)

B. Procedural History

Plaintiff filed the initial Complaint in this Action on August 17, 2015, (*see* Dkt. No. 1), and filed an Amended Complaint on October 21, 2015, (*see* Dkt. No. 14). Defendants filed an Answer on November 13, 2015. (*See* Dkt. No. 16.) Plaintiff filed a Second Amended Complaint on June 3, 2016. (*See* Dkt. No. 21.) Defendants filed an Answer to the Second Amended Complaint on June 30, 2016. (*See* Dkt. No. 27.)

The Parties filed their Motions for Summary Judgment and accompanying papers on January 20, 2017, (*see* Dkt. Nos. 42–49), and filed their oppositions on February 17, 2017, (*see* Dkt. Nos. 52–55). The Parties filed their papers in reply on March 3, 2017. (*See* Dkt. Nos. 56–57.)

---

[5] Bruxing is excessive grinding of the teeth or clenching of the jaw.

## II.  Discussion

### A.  Standard of Review

#### 1.  Summary Judgment

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

 "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the

pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal

quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a

motion for summary judgment is properly supported by documents or other evidentiary

materials, the party opposing summary judgment may not merely rest on the allegations or

denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental

Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage,

"[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a

court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm.

Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks

omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only

evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the

statements 'must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v.

Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v.

M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for

summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v.*

*Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks omitted)).

### 2. Benefits Claim Under ERISA

Section 502(a)(1)(B) of ERISA provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 503(2) of ERISA, in turn, "requires that claims for benefits be afforded a 'full and fair review by the appropriate named fiduciary of the decision denying the claim.'" *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 86 (2d Cir. 2009) (quoting 29 U.S.C. § 1133(2)). Courts "have defined a 'full and fair review' to mean 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering [its] decision.'" *Cejaj v. Bldg. Serv. 32B-J Health Fund*, No. 02-CV-6141, 2004 WL 414834, at *7 (S.D.N.Y. Mar. 5, 2004) (quoting *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994)). The purpose of the full and fair review requirement is to provide the claimant with enough information to challenge the decision in federal court. *See Juliano v. Health Maintenance Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000).

A court reviews "a plan administrator's decision de novo unless the plan vests the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case [a court] use[s] an 'abuse of discretion' standard." *Nichols v.*

*Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The Second Circuit has held that "in cases in which an abuse of discretion standard of review applies, because 'written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [a court] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious.'" *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). Under this standard, "[a] court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted); *see also Pagan*, 52 F.3d at 441 ("[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [the court] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." (internal quotation marks omitted)).

"[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 109 (alterations and internal quotation marks omitted); *see also McCauley*, 551 F.3d at 130 (same). "[A] plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make de novo review appropriate." *McCauley*, 551 F.3d at 133 (italics omitted). However, if both the claim administrator and a claimant "offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *Id.* at 132 (internal quotation marks omitted). But, "where the trustees of a plan impose a

standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *O'Shea v. First Manhattan Co. Thrift Plan & Tr.*, 55 F.3d 109, 112 (2d Cir. 1995) (alterations and internal quotation marks omitted).

Finally, in reviewing a claim for benefits under ERISA, "a district court's review under the arbitrary and capricious standard is limited to the administrative record," *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also Novick v. Metro. Life Ins. Co.*, 914 F. Supp. 2d 507, 521 (S.D.N.Y. 2012) (same); *Aitkins ex el. Casillas v. Park Place Enter. Corp.*, No. 06-CV-4814, 2008 WL 820040, at *12 (E.D.N.Y. Mar. 25, 2008) (same), unless the plan administrator is not "disinterested," in which case a district court may admit additional evidence only if good cause exists, *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006); *cf. Aitkins*, 2008 WL 820040, at *12 (explaining that "[t]he legal standard for considering evidence outside the administrative record depends on the standard of review to be applied to the claim," and that "[f]or a de novo review of the administrator's decision, 'the district court ought not to accept additional evidence absent good cause.'" (quoting *Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 646 (2d Cir. 2002)).

B.  Analysis

1.  Arbitrary & Capricious Standard of Review & Documents Considered

The Court reviews Aetna's denial of benefits under the arbitrary and capricious standard because the Plan grants Aetna "the discretionary authority to interpret the coverages and the insurance policy and to determine eligibility for benefits." (Admin. R. 91.)  *See Jennison v. Hartford Life & Accident Ins. Co.*, No. 10-CV-164, 2011 WL 3352449, at *5 (N.D.N.Y. Aug. 3, 2011) (concluding that similar language required the court to apply the arbitrary and capricious

standard to a denial of benefits claim); *Geiger v. Alstom Signaling Inc.*, No. 06-CV-6561, 2010

WL 1509343, at *13 (W.D.N.Y. Apr. 14, 2010) (same); *Winter v. Hartford Life & Accident Ins.

Co.*, 309 F. Supp. 2d 409, 414 (E.D.N.Y. 2004) (same). Moreover, the Parties do not contest that

the arbitrary and capricious standard of review is appropriate. (*See* Br. in Supp. of Defs.' Mot.

for Summ. J. Dismissing Pl.'s Compl. ("Defs.' Mem.") 9 (Dkt. No. 43) ("As the Plan confers

discretionary authority to Aetna to determine eligibility for benefits or to construe the terms of

the [P]lan, the arbitrary and capricious standard must be applied when this Court reviews Aetna's

benefit determination."); Br. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 11 (Dkt. No. 48)

("Given the grant of discretion set forth in Aetna's Summary Plan Description, it appears that the

Court will apply the arbitrary and capricious standard of review.").) *See Novella v. Westchester

County*, 661 F.3d 128, 140 (2d Cir. 2011) (addressing the defendants' interpretation of the plan

under the arbitrary and capricious standard because "in their briefing . . . the parties appear[ed] to

agree that the arbitrary-and-capricious standard applie[d] in th[e] case"). Generally "a district

court's review under the arbitrary and capricious standard is limited to the administrative

record," *Miller*, 72 F.3d at 1071, and the Court will so limit the review to the Administrative

Record in this case, especially because no Party argues otherwise.

          2.  Denial of Benefits

      In determining whether Aetna's decision to deny Plaintiff benefits was arbitrary and

capricious, the Court turns first to the Plan, as ERISA instructs a plan administrator to "discharge

[its] duties with respect to a plan . . . in accordance with the documents and instruments

governing the plan insofar as such documents and instruments are consistent with the provisions

of [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

The Plan insures Plaintiff for "[d]ental [s]ervices" for "treatment of infection or disease that is not related to the teeth," (Admin. R. 38), and excludes from coverage "dental services or treatment, except as specified," (*id.* at 44 (emphasis omitted)).[6] Aetna denied Plaintiff's claim for benefits because it did not "correlate ECR with any systemic disorder" and determined that it was "a localized dental condition." (*Id.* at 286; *see also id.* at 307.) In support of her contention that the denial of medical coverage to Plaintiff for surgical procedures was arbitrary and capricious, Plaintiff raises eight arguments that can be broadly categorized as issues with the sufficiency of Aetna's medical reviews, bias of those involved in the review process, and Aetna's responsibilities as a fiduciary. (*See* Pl.'s Mem. 10–25.) The Court addresses each argument in turn.

a.  Alleged Deficiencies in Medical Review

Among the issues Plaintiff identifies with Aetna's medical review are the alleged disregard of evidence from Plaintiff's medical providers, bias of Aetna's hired experts, and failure to adhere to Aetna's Clinical Policy Bulletin.

Plaintiff generally asserts that "[t]here is ample evidence from [her] medical providers that ECR is a medical condition covered under the terms of [Plaintiff's] health [P]lan," (*id.* at 18), and "if Aetna had taken the time to honestly read and consider the scholarly articles and letters of support submitted by both [Plaintiff] and her treating providers, it would have inevitably decided to cover her claim for medical benefits," (*id.* at 20).

---

[6] To the extent Plaintiff relies upon an exhibit attached to her initial Complaint that appears to be the "R Consumer Directed Health Plan" dated 2014, stating that covered services include "oral surgery that is medical in nature," the Court declines to consider this document as it is outside the Administrative Record. (*See* Compl. Ex. A, at 31 (Dkt. No. 1).) Additionally, considering that at least some of Plaintiff's medical expenses accrued in 2013, the relevance of a 2014 Plan—as opposed to the version of the Plan included in the Administrative Record—is unclear.

Plaintiff further contends that, pursuant to the Plan, she was insured for "treatment of infection or disease that is not related to the teeth," (Admin. R. 38), and that her "doctors and surgeons all agree that her condition is one that is medical in nature. Hence [Plaintiff] has met her burden of proof," (Pl.'s Mem. 19; *see also id.* at 18 ("[Plaintiff's] providers have consistently documented that [Plaintiff's] diagnosis of ECR is in no way a disease that originates in, or is directly related to her teeth."); *id.* at 13–14 ("[Plaintiff] submitted substantial medical evidence from her treating doctors, all of which satisfied her burden of proof that she suffers from ECR, a medical condition with a medical diagnosis code, necessitating surgical treatment.")). There is no disagreement among the Parties that Plaintiff suffers from ECR; Aetna does not dispute her physicians' diagnosis. The record also makes clear that resulting symptoms necessitated surgical removal of Plaintiff's teeth. However, the opinions of Plaintiff's providers and the agreement among them that her condition is medical, does not establish that Aetna's decision to the contrary was arbitrary and capricious. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *see also Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006) ("[The] plan need not accord [the plaintiff's] treating physician[s] greater deference than [the] plan's retained physician[s]."). "Nothing in [ERISA] itself . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Nord*, 538 U.S. at 831; *see also Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d 170, 187 (D. Conn. 2010) ("Although one of the [p]laintiff's physicians . . .

16

unequivocally opined that the [p]laintiff is totally disabled from performing even a sedentary level of work, that opinion alone is insufficient to defeat the [d]efendants' motion for summary judgment.").

Plaintiff contends that rather than "meaningfully consider the competent evidence . . . in support of [Plaintiff's] claims," Aetna, "cherry[-]picked information from the record which supported its decision, and ignored everything else in the record." (Pl.'s Mem. 20 (internal quotation marks omitted); *see also id.* at 7 ("Aetna's medical evidence consists of a cursory 'records review' by their own employed insurance defense experts, who never even met [Plaintiff], spoke to her treating providers, or meaningfully considered her administrative appeal materials."); *id.* at 17 ("The bases of Aetna's denial in this case are two cursory, and grossly incomplete 'paper reviews' . . . .").) Plaintiff's contention that the reviews conducted by Aetna's doctors on appeal were "cursory" and that Aetna "completely ignored the opinions of [Plaintiff's] treating medical providers," (*id.*), finds no support in the record. The "appeal summary" for both levels of appeal indicate all of the materials reviewed, including clinical notes, x-rays, letters from Plaintiff's providers, "[four] published articles on ECR," and a "journal article." (Admin. R. 128, 286; *see also id.* at 128 (listing "sources" in the first-level appeal as "the appeal request, denial letter, progress notes, claim form, medical literature, x-rays, letter of medical necessity"); *id.* at 131 (listing "sources" in the second-level appeal as "appeal, letter of necessity, pre-determination, progress notes, x-ray, claim and literature").) Nothing in the record indicates that the appeals were superficial or incomplete. Plaintiff's disparaging description of the work does not negate the evidence in the record.

Here, Aetna based its decision on the opinion of medical professionals and claims analysts who reviewed Plaintiff's file and appeals materials. *See Kocsis v. Standard Ins. Co.*,

142 F. Supp. 2d 241, 252–53 (D. Conn. 2001) ("[The defendant's] review process involved not only independent medical reviews of the plaintiff's claims file but review by several benefits analysts. . . .  The court cannot consider, nor could a reasonable jury find, such a process to be one without reason.").  "These doctors arrived at a different conclusion . . . than the conclusion that [Plaintiff's physicians] . . . reached.  This, however, does not render [Aetna's] denial of benefits to . . . [P]laintiff devoid of reason or unsupported by substantial evidence."  *Id.* at 252.  "Regardless of how another reasonable mind might have arrived at a decision on . . . [P]laintiff's eligibility for . . . benefits . . . , the [C]ourt is not free to substitute its own judgment, or that of other medical professionals, for that of [Aetna], as the Plan's administrator, as if the [C]ourt were considering . . . [P]laintiff's eligibility anew."  *Id.* at 253; *see also McCauley*, 551 F.3d at 132 ("Where both the plan or . . . administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.").  "[T]he fact that [Plaintiff's] treating physicians *disagreed* with the physicians that Aetna retained does not, without more, make the decision to deny benefits arbitrary and capricious."  *DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 488 (S.D.N.Y. 2015) (emphasis added).[7]

---

[7] Plaintiff contends that "Aetna . . . acted in an arbitrary and capricious manner by requiring [Plaintiff] to provide definitive evidence that the etiology of her condition is a systemic medical disorder, given the fact that her doctors, Aetna's doctors and the peer-reviewed literature all acknowledge that ECR has no identifiable certain etiology."  (Pl.'s Mem. 13.)  In response, Defendants argue that "Aetna's benefit determination was never based upon Plaintiff's failure to prove the etiology of her ECR condition."  (Defs.' Opp'n 4.)  The Court agrees with Defendants.  In the first-level appeal decision, Aetna states the rationale for its denial of benefits:

> [ECR] apparently does not involve the bone and is not associated with any systemic osteoclastic process. . . .  The process is entirely confined to the dentition as there has been no correlation with any systemic disorder.  The clinical notes indicate that [Plaintiff] had [o]rthodontic treatment 20 years ago. . . .  Whether or not ECR is

### b.  Bias in Review

Plaintiff also asserts that the records review conducted by Drs. Loftus and Diecidue on behalf of Aetna were "clearly biased and disingenuous" and that both doctors "reach[ed] their conclusions in a summary, arbitrary fashion."  (Pl.'s Mem. 15–16.)   In regard to the work of Dr. Loftus, Plaintiff contends that "[h]e certainly was not qualified by education, training or experience to opine as to the *medical* basis of ECR."  (*Id.* at 15.)  As Defendants identify, "the doctors Plaintiff relies upon to opine that ECR *is* a medical condition are all dentists as well." (Defs.' Br. in Opp'n Pl.'s Mot. for Summ. J. and in Further Supp. of Defs.' Mot. for Summ. J. ("Defs.' Opp'n") 6 (Dkt. No. 54) (emphasis added).)  Further, with the exception of one, the articles Plaintiff relies upon each appear in publications specifically focused on periodontology, endodontics, and oral health.  (*See* Admin. R. 163–68, 179–208 (including work published in the Journal of Periodontology, the Journal of Natural Science, Biology and Medicine, the Journal of Endodontics, and the Journal of International Oral Health).)

Plaintiff's contention that Aetna "failed to have [Plaintiff] attend an Independent Medical Exam to be examined in person" is similarly unavailing.  (Pl.'s Mem. 7.)  The Second Circuit has expressed

> concern that requiring the plan administrator to order an [independent medical evaluation], despite the absence of objective evidence supporting the applicant's claim for benefits, risks casting doubt upon, and inhibiting, the commonplace practice of doctors arriving at professional opinions after reviewing medical files, which reduces the financial burden of conducting repetitive tests and examinations.

---

precipitated by an inflammatory process or is a fibro-vascular/fibro-osseous disorder it is a localized dental condition.

(Admin. R. 286.)  Aetna's decision on the second-level appeal similarly states that "[t]he available data did not correlate ECR with any systemic disorder.  This is a localized dental condition."  (*Id.* at 307.)  Simply put, neither appeal decision indicates that Aetna's decision was the result of Plaintiff's failure to establish a certain etiology of ECR.

*Hobson*, 574 F.3d at 91 (internal quotation marks omitted); *see also Dimopoulou v. First Unum Life Ins. Co.*, 162 F. Supp. 3d 250, 262 (S.D.N.Y. 2016) ("Unum is not required to conduct an in-person, independent medical examination of its insured."); *Lopes v. First Unum Life Ins. Co.*, No. 09-CV-2642, 2011 WL 1239899, at *8 (E.D.N.Y. Mar. 30, 2011) ("[The] [p]laintiff does not suggest in any way why such an examination is necessary, or what it could likely produce to support her claim over and above that which her own treating physicians and the many experts retained by [the] [d]efendant had already determined."); *Wagner v. First Unum Life Ins. Co.*, No. 02-CV-9135, 2003 WL 21960997, at *5 (S.D.N.Y. 2003), *aff'd*, 100 F. App'x 862 (2d Cir. 2004) (rejecting the argument "that First Unum's determination was arbitrary and capricious because [the plaintiff] was never subject to an [independent medical examination]"); *Scannell v. Metro. Life Ins. Co.*, No. 03-CV-990, 2003 WL 22722954, at *5 (S.D.N.Y. 2003) ("[T]he record fails to indicate that an independent medical examination was necessary to assess [the plaintiff's] claim.").

Additionally, the fact that Aetna's reviews were conducted by "hired insurance defense experts," (Pl.'s Mem. 17), does not itself support Plaintiff's argument that the review was arbitrary and capricious. "[T]he simple fact that the administrator of a plan . . . happens to be 'an arm of the employer' does not in itself create a conflict of interest." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1274 (2d Cir. 1995). "Indeed, it is customary for plan administrators to [compensate physicians] in evaluating ERISA claims." *Hobson*, 574 F.3d at 90; *see also Lopes*, 2011 WL 1239899, at *5 ("[The] [d]efendant did not abuse its discretion by considering these trained physicians' opinions solely because they were selected, and presumably compensated, by [the] [d]efendant." (internal quotation marks omitted)); *Doe v. Blue Cross Blue Shield of Mass., Inc.*, No. 07-CV-4023, 2010 WL 1541567, at *7 (S.D.N.Y. Apr. 12,

2010) ("BCBS did not forfeit its discretion by relying on the opinions of trained experts simply because the experts received some compensation, either directly or indirectly, from BCBS."); *Suren v. Metro. Life Ins. Co.*, No. 07-CV-4439, 2008 WL 4104461, at *11 (E.D.N.Y. Aug. 29, 2008) ("That they were paid consultants does not disable MetLife from considering their opinions in making benefits decisions.").[8]

### c. Adherence to the Clinical Policy Bulletin

In support of Plaintiff's contention that Aetna failed to consider coverage of her treatment under the terms set forth in its Clinical Policy Bulletin, Plaintiff reiterates similar arguments that merely indicate her disagreement with the outcome of Aetna's review.

Plaintiff cites to the submission of "several peer-reviewed scholarly articles . . . in support of her appeal" and the "letters submitted by [Plaintiff] and her doctors during her formal appeals process," and contends that had Aetna "critically read and analyzed the scholarly articles and letters," it "should have found that [Plaintiff] was entitled to medical coverage under both the terms of the [P]lan and the Clinical Policy Bulletin." (Pl.'s Mem. 21–23.) As noted, there is no evidence that Aetna failed to critically read and analyze the materials Plaintiff submitted in support of her appeals.

More specifically, Plaintiff asserts the "Clinical Policy Bulletin requires coverage under traditional health plans for surgical removal of soft-tissue impacted teeth" and that her "teeth *have been impacted and affected* by this disease requiring their surgical removal." (*Id.* at 22

---

[8] As to Plaintiff's contention that "one would . . . have to conclude that all of [Plaintiff's] prominent treating providers[] have essentially chosen to conspire to falsely characterize [Plaintiff's] condition," the Court disagrees that it must embrace a conspiracy theory "in order to accept Aetna's position as 'reasonable.'" (Pl.'s Mem. 18.) One might also conclude—as the Court does here—that Aetna's doctors and Plaintiff's doctors reasonably differed in their opinions as to the nature of Plaintiff's condition. Put another way, consensus is not a form of collusion in the absence of proof.

(emphasis added).)  Plaintiff argues that an article published in the Journal of Clinical Periodontology clarifies that ECR "does not have any 'pulpal involvement'" and "means that ECR actually originates outside the tooth altogether . . . ."  (*Id.* (emphasis omitted).)

The Court is neither equipped nor required to evaluate the medical merits of the literature Plaintiff cites.  But, even were the Court to accept Plaintiff's argument that the literature establishes that "ECR is not a disease of the teeth[,] [but] rather . . . a disease of the periodontal tissue," (*id.*), a plain reading of the Clinical Policy Bulletin makes clear that "soft tissue impacted teeth" is a medical term describing a type of tooth.  That is, the term connotes a tooth impacted *in* soft tissue and is not interchangeable with a tooth impacted *by* soft tissue.[9]  While it is undeniable that ECR has *affected* Plaintiff's teeth, Plaintiff has not established that Aetna arbitrarily denied coverage for "surgical removal . . . of soft-tissue impacted teeth" as detailed in the Clinical Policy Bulletin.  (Admin. R. 313.)[10]  Thus, it is not—as Plaintiff alleges—that Aetna "failed to consider covering [Plaintiff's] medical expenses under its own Clinical Policy Bulletin," but rather that Plaintiff disagrees with the determination Aetna reached.  (Pl.'s Mem. 21 (internal quotation marks omitted).)

It is clear that Plaintiff disputes the conclusions Aetna drew from the evidence its medical professionals and analysts reviewed.  Yet, Plaintiff fails to point to evidence in the record that demonstrates that she received treatment for a condition that was covered under the Plan that Aetna either intentionally ignored or otherwise failed to consider.  Furthermore, even if Plaintiff

---

[9] Indeed, this section of the Clinical Policy Bulletin is entitled "Removal of Impacted Teeth."  (Admin. R. 313.)

[10] The Clinical Policy Bulletin further states that "Removal of teeth at risk of infection, periodontal therapies, and subsequent oral rehabilitation reconstruction (i.e., the replacement of teeth) are not covered under medical plans."  (Admin. R. 314.)

identified directly contrary evidence in the record, which she has not, "the mere existence of conflicting evidence does not render the . . . decision arbitrary or capricious." *Lekperic v. Bldg. Serv. 32B-J Health Fund*, No. 02-CV-5726, 2004 WL 1638170, at *4 (E.D.N.Y. July 23, 2004). "It is not this Court's task to engage in an ad hoc weighing of the evidence or to substitute its judgment for that of the administrator." *Snyder v. First Unum Life Ins. Co.*, No. 02-CV-8895, 2004 WL 1784334, at *6 (W.D.N.Y. Aug. 6, 2004), *aff'd*, 144 F. App'x 134 (2d Cir. 2005). This Court must only determine whether Defendants' decision was arbitrary and capricious, and after a review of the Administrative Record, the Court finds that it was not.

### 3. Responsibilities as a Fiduciary

In support of her argument that Aetna failed to fulfill its responsibilities as a fiduciary, Plaintiff recounts "Aetna's obvious refusal to consider the pertinent evidence available to support [Plaintiff's] claim" and recites the relevant legal standards and contends that in light of these standards, "Aetna has flagrantly disregarded its fiduciary obligations to [Plaintiff], with intent, to her great and substantial detriment." (Pl.'s Mem. 24–25.)

As noted, the record does not reflect that Aetna "refus[ed] to consider the pertinent evidence," (*id.* at 24), and Plaintiff's conclusory assertions that "it seems clear that Aetna has breached its fiduciary duties to [Plaintiff] under ERISA" based on that alleged refusal, (*id.*), are without support in the record or in case law. The conclusory assertion that "there is no question that Aetna's conduct constitutes much more than simply a breach of contract," does not make it so. (*Id.* at 25.)[11] Accordingly, the Court finds that Aetna did not breach its fiduciary obligations to Plaintiff.

---

[11] On the twenty-sixth page of her Motion for Summary Judgment, Plaintiff, for the first time, raises the claim that Aetna's benefits determination letter violated federal ERISA regulations pursuant to 29 C.F.R. § 2560.503-1(g)(1)(v). (*See* Pl.'s Mem. 26–29.) In addition to

### 4.  Full and Fair Review

Finally, Plaintiff contends that Aetna did not afford her claim for benefits a full and fair review because it did not "consider any and all pertinent information available" and "consider the evidence presented by both [P]arties prior to reaching and rendering a decision."  (Pl.'s Mem. 30–31.)  Plaintiff recites the requirements for a full and fair review pursuant to ERISA, but identifies no specific failures in the instant Action.  Rather, in conclusory fashion, Plaintiff asserts that "[i]n this case, Aetna, seemingly by design, has failed utterly in providing Plaintiff a full and fair review of her claim for medical benefits, and hence the denial of benefits is arbitrary and capricious and must be reversed."  (*Id.* at 31.)

The Court disagrees.  There is nothing in the record to suggest that Aetna failed to consider pertinent information or evidence submitted by Plaintiff.  To the contrary, Aetna detailed the materials reviewed on each level of appeal and used language from the Plan to explain its denial decision.[12]

### III.  Conclusion

After a review of the Administrative Record, the Court finds that Aetna's decision to deny Plaintiff benefits was not arbitrary and capricious.  "Plaintiff's arguments go to the weight of the

---

the fact that Plaintiff did not seek an enlargement of the 25-page limit for briefing, she "cannot raise a new claim for the first time in a cross-motion for summary judgment." *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 491 F. Supp. 2d 386, 402 (S.D.N.Y. 2007), *aff'd sub nom. Gadsden v. Bernstein Litowitz Berger & Grossman*, 323 F. App'x 59 (2d Cir. 2009). Accordingly, this claim is dismissed.

[12] Even were the Court to find Aetna's denial of benefits was arbitrary and capricious, the Court would not "award[] medical benefits for all treatment, surgeries and procedures in question" as Plaintiff requests.  (Pl.'s Mem. 32.)  The case law makes "clear that even where [a court] conclude[s] a plan administrator's finding was arbitrary and capricious, [the court] will typically not substitute [its] own judgment, but rather will return the claim for reconsideration unless . . . 'there is no possible evidence that could support a denial of benefits.'"  *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490 (2d Cir. 2013) (quoting *Miller*, 72 F.3d at 1074).

evidence, not the reasonableness of [Aetna's] decision or whether it was supported by substantial evidence in the record. Plaintiff simply disagrees with [Aetna's] conclusions and decision." *Snyder*, 2004 WL 1784334, at *6. Accordingly, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted.

The Clerk of Court is respectfully requested to terminate the pending Motions, *(see* Dkt. Nos. 42, 47), enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:     September 21, 2017
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25